UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ELBERT D. SAYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-CV-17 |
| ) | (Phillips/Shirley) |
| JO ANNE BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion for Judgment on the Pleadings to Reverse the Commissioner's Decision [Doc. 14] and the defendant's Motion for Summary Judgment [Doc. 16]. The plaintiff, Elbert D. Sayers, seeks judicial review of the final decision of the Commissioner denying his application for period of disability, disability insurance benefits, and supplemental security income under the Social Security Act.

On July 28, 2003, the plaintiff filed his applications for disability insurance benefits and supplemental security income, claiming disability as of April 27, 2001. (Tr. 72). After his applications were denied initially and upon reconsideration, the plaintiff requested a hearing. On April 14, 2005, a hearing was held before an Administrative Law Judge ("ALJ") to review the determination of the plaintiff's claim. (Tr. 378). On July 25, 2005, the ALJ found that the plaintiff

was not disabled because he could perform a significant number of light jobs. (Tr. 14-23). The Appeals Council denied the plaintiff's request for review, (Tr. 5-8), and the decision of the ALJ became the final decision of the Commissioner. The plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

The plaintiff moves for a judgment on the pleadings in his favor, arguing that the ALJ erred in rejecting the uncontradicted consistent disabling medical opinions of the plaintiff's treating orthopedic surgeon and his treating family physician and that the ALJ erred in determining the plaintiff's residual abilities by concluding that the plaintiff was capable at all times relevant to his claim of performing limited light work with minimal mental restrictions. [Doc. 15].

The Commissioner responded to the plaintiff's motion with a motion for summary judgment, contending that the ALJ's residual functional capacity ("RFC") finding accounted for the credible limitations imposed by the plaintiff's treating sources, and that vocational expert testimony established that the plaintiff could perform thousands of jobs even though his ability to perform a full range of work was compromised. [Doc. 17].

Plaintiff was 42 years old at the time of the ALJ's decision. (Tr. 14). He has a high school equivalency diploma, and his past relevant work experience includes employment as a mason, truck driver, and receptionist. (Id.). He alleges that he is disabled due to bilateral knee replacement and pain, ulcers, sleep apnea, and depression. (Tr. 15).

The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's status-post right knee arthroplasty times three with total knee replacement; status-post left knee arthroplasty with total knee replacement; sleep apnea; sleep apnea [sic]; restless leg syndrome; and depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to lift and carry 20 pounds occasionally or 10 pounds frequently; or sit, stand, and walk for about 4 hours each of out of an 8 hour day, but not more than 1 hour continuously. The claimant cannot perform more than occasional climbing or bending at the waist, or any more than infrequent crawling or kneeling. The claimant cannot perform work precluded by the partial loss of the right index finger. The claimant can understand, remember, and execute some detailed instructions on a sustained basis. The claimant cannot work with the public and he will have occasional difficulty with, but will be able to, interact with co-workers and accept criticism. The claimant can adjust to infrequent changes in a work setting.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

> 11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).
>
> 12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, as well as the testimony of the vocational expert, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include the following light exertion jobs in the state and national economy: production inspector, numbering 2,700 in the state economy and 70,000 in the national economy; grader/sorter, numbering 1,800 in the state economy and 70,000 in the national economy; and production machine tender, numbering 2,000 in the state economy and 139,000 in the national economy.
>
> 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 22-23).

If the Commissioner's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); see Tyra v. Secretary of Health & Human Services, 896 F.2d 1024, 1028 (6th Cir. 1990). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the Secretary or whether the reviewing judge may have decided the case differently. See Tyra, 896 F.2d at 1028; Blankenship v. Bowen, 874 F.2d 1116, 1120 (6th Cir. 1989); Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Court will first address the plaintiff's contention that the ALJ erred in rejecting the consistent medical opinions of his treating orthopedic surgeon, Harold Cates, M.D., and his treating family physician, Bruce Webb, D.O. The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. See Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993). If the treating physician's opinion does not meet the test for controlling weight, the ALJ then weighs the opinion along with the other opinions in the record. See 20 C.F.R. § 404.1527(d)(2).

On November 25, 2003, Dr. Cates completed a form submitted by the plaintiff's representative and opined that the plaintiff could lift and carry 20 pounds infrequently, but could not stand or walk more than 30 minutes in a day. (Tr. 237). Dr. Cates indicated that the plaintiff could infrequently bend at the waist, frequently reach above shoulders, infrequently stand on hard surfaces, and frequently use his hands for fine manipulation. When asked whether the plaintiff would require bedrest or would need more than a normal amount of breaks, Dr. Cates checked "no." (Tr. 238). Dr. Cates further opined that the plaintiff could not work a full workweek and stated that the plaintiff had significant concentration problems. Dr. Cates did not indicate, however, that the plaintiff would require chronic absences from work. (Tr. 239).

On January 9, 2004, Dr. Webb also submitted a form assessing the plaintiff's capacity for work. (Tr. 334). Dr. Webb opined that the plaintiff could lift and carry 20 pounds occasionally, or ten pounds frequently; and sit, stand, or walk up to 4 hours each day, but not more than an hour

5

at a time. (Tr. 334). Dr. Webb further opined that the plaintiff could occasionally bend at the waist, frequently reach above his shoulders, infrequently stand on hard surfaces, infrequently use his hands for fine manipulation; and had been advised to elevate his lower extremities, which Dr. Webb indicated was the reason for the plaintiff's need to sit frequently. (Tr. 334-35). Dr. Webb opined that the plaintiff would not be able to work a full workweek and that he would have significant concentration difficulties. (Tr. 335). Dr. Webb further stated that he thought that the plaintiff would miss approximately 4-5 days of work per month. (Tr. 336).

The ALJ's RFC finding was consistent with significant aspects of Dr. Cates's opinion, including the plaintiff's reported ability to sit up to 7 ½ hours a day, for one hour at a time, and his ability to lift up to 20 pounds on an infrequent basis. (Tr. 237). While the ALJ rejected Dr. Cates's opinion that the plaintiff was unable to stand or walk more than ½ hour out of an entire work day, the Court finds that he was justified in doing so. As the ALJ noted, the plaintiff's physical therapy notes indicated continued knee pain, but described the plaintiff as being "fully functional" and as "progressing well." (Tr. 257). The physical therapy notes further indicate that the plaintiff was able to ambulate 30 minutes at a time and was able to use stairs and squat. (Id.). These later and more favorable accounts of the plaintiff's functional abilities contradict Dr. Cates's more extreme limitations and justify the ALJ's rejection of the same. See Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).

Further, Dr. Cates's records indicate that he believed the plaintiff to be capable of performing some work, as he recommended that the plaintiff undergo vocational rehabilitation. (Tr. 221). Dr. Cates also imposed far less restrictive work limitations, concluding that the plaintiff could perform work consisting of no squatting, kneeling, or climbing; alternate sitting and standing; no

6

repetitive lifting over 20 pounds; and no work over ladders more than 3-4 steps. (Tr. 221). These restrictions, which are largely consistent with the ALJ's RFC finding, were imposed before the plaintiff underwent a successful knee replacement and before he was described by his physical therapist as "fully functional" and able to climb stairs and squat. (Tr. 257). In light of this conflicting evidence and the absence of objective medical findings, the Court finds that it was reasonable for the ALJ to reject the most extreme limitations stated in Dr. Cates's most recent opinion. See Stanley v. Secretary of Health and Human Services, 39 F.3d 115, 118 (6th Cir. 1994).

With respect to Dr. Webb's opinion, the ALJ's RFC finding was largely consistent with the limitations opined by Dr. Webb. The ALJ rejected some of Dr. Webb's more extreme opinions on the grounds that they lacked credible support. The Court finds that the ALJ was reasonably justified in doing so. In the functional capacity form, Dr. Webb did not supply objective medical findings or explain why the plaintiff would have such extreme concentration difficulties or miss work on such a frequent basis. (Tr. 334-36). Similarly, Dr. Webb's treatment notes do not contain observations or objective medical findings that would tend to corroborate such disabling limitations. As the ALJ noted, the contemporaneous treatment records from other sources, such as Dr. Cates, the plaintiff's physical therapist, and the plaintiff's mental health providers, indicate that the plaintiff was an individual who was able to work with appropriate limitations. For example, while Dr. Webb opined that the plaintiff would have significant problems with concentration, the plaintiff's mental health providers did not indicate that the plaintiff had concentration difficulties but instead described his mental status signs as normal. (Tr. 364-69). Further, as the ALJ noted, the plaintiff informed Dr. Castellani that his daily activities included watching television, working on puzzles, cooking and performing household chores such as laundry, dishwashing, vacuuming and

7

light repair work even before he started taking psychotropic medications. (Tr. 183). The Court finds that these activities suggest that the plaintiff's concentration problems were not as severe as Dr. Webb opined, and combined with the other contradictory evidence noted above, justified the ALJ's rejection of those portions of Dr. Webb's report that lacked credible support.

Next, the Court will address the plaintiff's contention that the ALJ erred in determining the plaintiff's residual abilities by concluding that the plaintiff was capable at all times relevant to his claim of performing limited light work with minimal mental restrictions. In so arguing, the plaintiff argues that the ALJ should have instructed the vocational expert that the plaintiff needed to elevate his legs; that the ALJ should have at least awarded a closed period of disability benefits since his three surgeries spanned 20 months; and that the ALJ committed reversible error with respect to the evaluation of his mental impairment. The Court will address each of these arguments in turn.

In his report, Dr. Webb indicates that the plaintiff had been advised to elevate his right leg, and that was the "reason for frequent sitting." (Tr. 335). Dr. Webb further indicates that the plaintiff should be allowed to sit for 4 hours out of an 8 hour workday, and the ALJ adopted this limitation. Accordingly, the Court finds that the ALJ's RFC finding accounted for Dr. Webb's concern. Dr. Cates was also asked about the need for the plaintiff to elevate his legs; however, Dr. Cates left this question blank. (Tr. 238). In his treatment notes, Dr. Cates repeatedly commented on the work restrictions that the plaintiff would need, but did not indicate that the plaintiff needed a special accommodation to elevate his legs. (Tr. 221-229). For these reasons, the Court does not find that the ALJ's hypothetical question was in error.

8

With respect to the plaintiff's claim for a closed period of disability, the Court similarly finds that the plaintiff's claim is unsupported. Under the Social Security Act, a claimant's disability must last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d). Although the plaintiff required recuperation periods after his respective surgeries, Dr. Cates imposed work restrictions, consistent with the ALJ's RFC finding, within months of his first procedure. (Tr. 228-29). Furthermore, although the plaintiff had knee replacements in August 2003 and April 2004, the plaintiff's physical therapy notes indicate that he was "fully functional" by July, 2004. (Tr. 257). Accordingly, the Court finds that there was no continuous 12-month period of disability for benefits should have been awarded.

Finally, with respect to the plaintiff's argument that the ALJ erred with respect to the evaluation of his mental impairment, the Court finds the plaintiff's argument to be without merit. The consultative evaluation that notes marked mental limitations was performed by Dr. Castellani before the plaintiff started psychological treatment. After the plaintiff began treatment, Dr. Greenwood provided GAF scores indicating only slight or mild symptoms, and the plaintiff's treatment records note positive clinical signs. (Tr. 364-67). Dr. Greenwood further noted his belief that the plaintiff may have been malingering because of his application for disability benefits and that both the plaintiff and his wife had previously applied for disability for different impairments, including chronic fatigue syndrome, fibromyalgia, and allergies. (Tr. 368-69). In light of this evidence, the Court finds that the ALJ's RFC finding, which included significant mental limitations, was appropriate.

In light of the foregoing, I find that substantial evidence on the record as a whole supports the ALJ's decision that the plaintiff is not disabled. It is hereby **RECOMMENDED**[1] that the plaintiff's Motion for Judgment on the Pleadings to Reverse the Commissioner's Decision [Doc. 14] be **DENIED** and that the defendant's Motion for Summary Judgment [Doc. 16] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).